UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**DAVID SHICHMAN,** on behalf of himself and all others
similarly situated,

<table>
<tr><td></td><td>Plaintiff,</td><td>**COMPLAINT**</td></tr>
<tr><td>-vs.-</td><td></td><td>**1:14 CV 1681**</td></tr>
</table>

**TTN, LLC, BIOCEUTICA LLC, LOUIS DECAPRIO,**    **Class Action**
**SCOTT STANWOOD, TODD STANWOOD, JOHN**
**DOES 1-10 AND JANE DOES 1-10,**    **Jury Demanded**

Defendants.

David Shichman ("Plaintiff"), on behalf of himself and all others similarly situated, for

his class action Complaint against Defendants TTN, LLC ("TTN"), Louis Decaprio

("Decaprio"),  Scott Stanwood ("S. Stanwood"), Todd Stanwood ("T. Stanwood."), John Does 1-

10, Jane does 1-10 (collectively "Sales Defendants"), and Bioceutica,  LLC ("Bioceutica")

(collectively "Defendants"),  states as follows:

## NATURE OF THE ACTION

1.      Plaintiff is bringing this action on behalf, of himself and two Classes for

Defendants' violations of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. §

227 and New York General Business Law ("GBL") § 399-p.  In short, upon information and

belief, from four years prior to the date of the filing of the instant Complaint through on or about

June 2012, the Sales Defendants, using an automatic telephone dialing system which which was

also an automatic dialing-announcing device, made thousands of telephone calls to persons

throughout the United States, including to New York, without the consent of the persons' called,

which left a prerecorded message, for the purposes of advertising the the Sales Defendants'

seminars at which Sales Defendants' sales kits, selling system and/or  products would be

advertised.  The purpose of the seminars was to induce persons to purchase the Sales

Defendants' sales kits and/or products and become salespersons for Defendants' sales kits and

products.

       2.     Upon infromation and belief, in the above-derscribed calls, the Sales Defendants

failed to disclose the address and the telephone number of the person on whose behalf the calls

were being made.

       3.     For the purposes of this Complaint, an "automatic telephone dialing system"

means any equipment which has the capacity (i) to store or produce telephone numbers to be

called, using a random or sequential number generator; and (ii) to dial such numbers.

       4.     For the purposes of this Complaint, an "automatic dialing-announcing device"

means any automatic equipment which incorporates a storage capability of telephone numbers to

be called and is used, working alone or in conjunction with other equipment, to disseminate a

prerecorded message to the telephone number called without the use of an operator.

       5.     Upon information and belief, on or about the end of June 2012 Bioceutica

purchased and/or took over TTN and agreed to assume all of the TTN's liabilities, whether

known or unknown.

       6.     Upon information and belief, to the extent that Bioceutica did not contractually or

expressly asusme TTN's liabilities with respect to this case, Bioceutica and TTN entered into an

actual or "de facto" merger, inasmuch as the former owners and employees of TTN are now the

owners and employees of Bioceutica and are continuing the business of TTN through Bioceutica

albeit only under a different name.  Thus, by either contract, law or equity, Bioceutica is a

succesor to TTN and has succesor liability for TTN's violations of the applicable statutes as if

Bioceutica were TTN.

7.     Defendants' calls violated the TCPA, which prohibits, among other things, making telephone calls using any automatic telephone dialing system or an artificial or prerecorded voice to cellular and residential telephone lines in an effort to advertise goods or services, without the express consent of the recipients of those calls.  The TCPA also prohibits using any automatic telephone dialing system or an artificial or prerecorded voice to call cellular and residential telephone lines to advertise free seminars at which products or services for sale will be advertised.

8.     The calls Defendants made into New York also violated New York GBL § 399-p, which prohibits any person from placing a telephone call using an automatic dialing-announcing device that does not state the address and telephone number of the person on whose behalf the call is being made.

9.     Because the individual defendants caused TTN to violate the statutes and they violated them themselves, they are directly and personally liable for such violations.

10.     Accordingly, Plaintiff brings this class action for Defendants' violations of the TCPA and GBL § 399-p.

## JURISDICTION AND VENUE

11.     This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

12.     This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's and Class B's GBL § 399-p claims.

13.     Venue is this judicial district is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claims in this case occurred.

## PARTIES

14.     Plaintiff is a citizen of New York State and resides in Queens, New York, which is within the Eastern District of New York.

15.     Defendant TTN, also known as the Trump Network, is a Delaware Limited Liability Company which had its principal place of business located at 428 Newburyport Turnpike, Rowley, Massachusetts 01923.

16.     Upon information and belief, Defendant Louis DeCaprio, is a citizen and resident of the State of Massachusetts and at all relevant times was a member and manager of TTN.

17.     Upon information and belief, Defendant Scott Stanwood, is a citizen and resident of the State of Massachusetts and at all relevant times was a member and manager of TTN.

18.     Upon information and belief, Defendant Todd Stanwood is a citizen and resident of the State of Massachusetts and at all relevant times was a member and manager of TTN.

19.     Upon information and belief, Bioceutica is a Delaware Limited Liability Company with its principal place of business located at 42A Cherry Hill Drive, Danvers, Massachusetts 01923.  Upon information and belief, each of DeCaprio, and the Stanwoods are members and managers of Bioceutica.

## DEFENDANT'S ILLEGAL CONDUCT

20.      Upon information and belief, on or about April 28, 2011, the Sales Defendants, without Plaintiff's express consent, using an an automatic telephone dialing system which was also an automatic dialing-announcing device, caused Plaintiff to be called on his cell phone in Queens County, New York, and left a precrecorded message advertising a seminar at which the Sales Defendants' sales kits, selling system and/or products would be advertised.  Upon information and belief, the purpose of the seminar was to induce persons to purchase the Sales

4

Defendants' sales kits and/or products and become salespersons for the Sales Defendants' sales

kits and products. This call failed to disclose the address and/or the telephone number of the

person on whose behalf the call was being made.  Nothing in Federal, State or local law

prohibited or prohibits such disclosures.

21.     The prerecorded message the Sales Defendants left on Plaintiff's cell phone stated

as follows: "This is Teremy calling on behalf of Donald Trump's new company, the Trump

Network.  The reason I'm contacting you is because Donald is expanding his new company in

your area so we're reaching out to business minded individuals to extend an exclusive invitation

to you.  This week only, Donald's top executives will be hosting private information sessions

through live, online webinars, and I'd like to invite you to attend one.  To register for the

Webinar call 801-635-5787.  Until then, make it a great day."

22.     Plaintiff did not have an established business relationship with any of the

Defendants at the time he received the above-described call.

23.     Upon information and belief, from four years prior to the date of the filing of the

instant Complaint through on or about June 2012, the Sales Defendants, using an automatic

telephone dialing system which was also an automatic dialing-announcing device, made more

than 3,000 telephone calls to persons' residential and/or cellular telephone lines throughout the

United States, which persons did not have an established business relationship with any of the

Defendants, without the consent of the persons' called, which contained a prerecorded message

identical or substantially similar the prerecorded message the Sales Defendants left for Plaintiff

in this case.

24.     Upon information and belief, from three years prior to the date of the filing of the

instant Complaint through on or about June 2012, the Sales Defendants, using an automatic

telephone dialing system which was also an automatic dialing-announcing device, made more than 1,000 telephone calls to persons in New York which contained a prerecorded message identical or substantially similar to the prerecorded message the Sales Defendants left for Plaintiff in this case.

25.     Upon information and belief, Defendants Decaprio, T. Stanwood and S. Stanwood, who were mangers of TTN at the time that all of the above-described calls were made, specifically, individually and personally directed and authorized that those calls be made in the manner in which they were made, were intimately involved in the program to make these calls and authorized payment for those calls.  Upon information and belief they each, individually, were the guiding spirits and central figures behind these calls being made and the manner in which they were made.

26.     Upon information and belief, the Sales Defendants obtained the telephone numbers of the persons they called form a vendor of telephone number lists, and not from any customer lists or records that the Sales Defendants had themselves.

27.     Upon information and belief on or about June 2012, Bioceutica purchased and/or otherwise acquired TTN.  Upon information and belief, as part of that purchase and/or acquisition, Bioceutica agreed to assume all of the TTN's liabilities, whether known or unknown.

28.     In the alternative, upon information and belief, and or about June 2012, Bioceutica intended to absorb and continue the operation of TTN through a de facto merger, in which TTN transferred all of its assets to Bioceutica, payment was made by Bioceutica's issuing stock or ownership directly to TTN's owners, and in exhange for the TTN's members' ownership in TTN, Bieoceutica agreed to assume all of TNN's debts and liabilities.

## CLASS ALLEGATIONS

29.     Plaintiff brings this class action for Defendants' violations of the TCPA and GBL 399-p on behalf of himself and all others similarly situated under rule 23(a) and 23(b)(1)-23(b)(3) of the Federal Rules of Civil Procedure.

30.     Plaintiff seek to represent two classes of individuals ("the Classes") defined as follows:

Class A:  All persons in the United States from four years prior to the date of the filing of the instant Complaint through on or about June 2012, who did not have an established business relationship with Defendants, whose cellular telephone or residential telephone lines the Sales Defendants called, using an automatic telephone dialing system which was also an automatic dialing-announcing device, without the consent of the persons' called, which calls contained a prerecorded message identical or substantially similar to the prerecorded message the Sales Defendants left for Plaintiff in this case on or about April 28, 2011.

Class B: All persons in New York State, from three years prior to the date of the filing of the instant Complaint through on or about June 2012, whom the Sales Defendants called, using an automatic telephone dialing system which was also an automatic dialing-announcing device, which calls contained a prerecorded message identical or substantially similar to the prerecorded message the Sales Defendants left for Plaintiff in this case on or about April 28, 2011.

31.     Numerosity: The Classes are so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

32.     Upon information and belief each of the Classes contains at a minimum thousands of members.

33.     Upon information and belief, the Classes' size and the identities of the individual members thereof are ascertainable through Defendants' records, including, but not limited to Defendants' call records.

34.     Members of the Classes may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to the Classes and deemed necessary and/or appropriate by the Court.

35.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the Classes.  The claims of the Plaintiff and members of the Classes are based on the same legal theories and arise from the same unlawful conduct.

36.     Defendanst placed a telephone call to Plaintiff and each of the members of Class A, using an automatic telephone dialing system which was also an automatic dialing-announcing device, without the consent of the person called, which call contained a prerecorded message identical or substantially similar to the prerecorded message the Sales Defendants left for Plaintiff in this case on or about April 28, 2011.

37.     Defendants placed a telephone call to Plaintiff and each of the members of Class B, using an automatic telephone dialing system which was also an automatic dialing-announcing device, which call contained a prerecorded message identical or substantially similar to the prerecorded message the Sales Defendants left for Plaintiff in this case on or about April 28, 2011.

38.     <u>Common Questions of Fact and Law</u>:  There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Classes.

39.     The questions of fact and law common to Plaintiff and Class A predominate over

questions which may affect individual members and include the following:

(a) Whether Defendants' conduct of placing a call to Plaintiff and each of the members of the Class A using an automatic telephone dialing system which was also an automatic dialing-announcing device, without the consent of the person called, which call contained a prerecorded message identical or substantially similar to the prerecorded message the Sales Defendants left for Plaintiff in this case, violated the TCPA (47 U.S.C §§ 227(b)(1)(A)(iii), 227(b)(1)(B)) and/or the regulations promulgated thereunder;

(b) Whether Plaintiff and the members of Class A are entitled to statutory damages under the TCPA (47 U.S.C. § 227(b)(3)) for Defendants' acts and conduct;

(c) Whether Defendants' acts in violation of the TCPA were willful and/or knowing such that Plaintiff and class A are entitled to treble statutory damages; and

(d) Whether Plaintiff and members of the Class A are entitled to a permanent injunction enjoining Defendants from continuing to violate the TCPA.

40.     The questions of fact and law common to Plaintiff and Class B predominate over questions which may affect individual members and include the following:

(a) Whether Defendants' conduct of placing a call to Plaintiff and each of the members of the Class B using an automatic telephone dialing system which was also an automatic dialing-announcing device, which call contained a prerecorded message identical or substantially similar to the prerecorded message the Sales Defendants left for Plaintiff in this case, violated GBL § 399-p(3)(a);

(b) Whether Plaintiff and the members of Class B are entitled to statutory damages under GBL § 399-p(9) for Defendants' acts and conduct;

(c) Whether Plaintiff and members of the Class B are entitled to a permanent injunction

under GBL § 399-p(9) enjoining Defendant from continuing to violate GBL 399-p; and

(d) Whether Plaintiff and the members of Class B are entitled to the costs and attorneys' fees under GBL § 399-p(9).

41.     <u>Adequacy of Representation</u>:  Plaintiff is an adequate representative of the Classes because Plaintiff's interests do not conflict with the interests of the members of the Classes. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Classes and has no interests antagonistic to the members of the Classes.  Plaintiff has retained counsel who is competent and experienced in litigation in the federal courts and class action litigation.

42.     <u>Superiority</u>:  A class action is superior to other available means for the fair and efficient adjudication of the claims of the Classes. While the aggregate damages which may be awarded to the members of the Classes are likely to be substantial, the damages suffered by individual members of the Classes are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Classes to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendants by any member of the Classes. The likelihood of the individual members of the Classes prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Classes. Plaintiff knows of no difficulty to be encountered in the

management of this action that would preclude its maintenance as a class action.

43.     <u>Injunctive Relief</u>:  Defendants have acted on grounds generally applicable to Plaintiff and members of the Classes A and B, thereby making appropriate final injunctive relief with respect to Plaintiff and Classes A and B.

## FIRST CLAIM FOR RELIEF

### (Against the Sales Defendants)

44.     Plaintiff repeats each and every allegation contained in all of the above paragraphs and incorporates such allegations by reference.

45.     By Defendants' above-described conduct Defendants committed over 3,000 violations of the TCPA against Plaintiff and Class A.

46.     Accordingly, Plaintiff and Class A are entitled to statutory damages under 47 U.S.C. § 227(b)(3) greater than $1,500,000.

47.     Should the court determine that the Defendants' above-described conduct was willful and/or knowing, Plaintiffs and the members of class A are entitled to statutory damages of more than $4,500,000.

48.     In addition, Plaintiff and Class A are entitled to an injunction against Defendants ordering Defendants to cease their violations of the TCPA.

## SECOND CLAIM FOR RELIEF

### (Against the Sales Defendants)

49.     Plaintiff repeats each and every allegation contained in all of the above paragraphs and incorporates such allegations by reference.

50.     By Defendants' above-described conduct Defendants committed over 1000 violations of GBL 399-p(3)(a) against Plaintiff and Class B.

51.     Accordingly, Plaintiff and Class B are entitled to over $50,000 in statutory damages provided under GBL § 399-p(9), plus attorney's fees and costs of this action.

52.     In addition, Plaintiff and Class B are entitled to an injunction against Defendants ordering Defendants to cease its violations of the GBL § 399-p(3)(a).

### THIRD CLAIM FOR RELIEF

### (Against Bioceutica)

53.     Plaintiff repeats each and every allegation contained in all of the above paragraphs and incorporates such allegations by reference.

54.     Upon information and belief, on or about June 2012, Bioceutica purchased and/or otherwise acquired TTN.  Upon information and belief, as part of that purchase and/or acquisition, Bioceutica agreed to assume all of the TTN's liabilities, whether known or unknown.

55.     In the alternative, upon information and belief, and or about June 2012, Bioceutica intended to absorb and continue the operation of TTN through a de facto merger, in which TTN transferred all of its assets to Bioceutica, payment was made by Bioceutica's issuing membership in its LLC directly to TTN's members, and in exhange for their ownership TTN, Bieoceutica agreed to assume all of TNN's debts and liabilities.  In the alternaitve, Bioceutica ia mere continuation of the business of TTN.

56.     Bioceutica is the successor to TNN and the Sales Defendants' liabilities. Accordingly, Bioceutica is liable for the Sales Defendants' committing: (a) over 3,000 violations the TCPA against Plaintiff and Class A (First Claim for Relief) and (b) over 1000 violations of GBL 399-p(3)(a) against Plaintiff and Class B (Second Claim for Relief).

57.     As to its successor liability for the First Claim for Relief, Bioceutica is liable to Plaintiff and Class A are entitled to statutory damages under 47 U.S.C. § 227(b)(3) greater than

$1,500,000.

58.     Should the court determine that the Sales Defendants' violation of the TCPA was willful and/or knowing, Bioceutica is liable to Plaintiffs and the members of class A for statutory damages of more than $4,500,000.

59.     As to its successor liability for the Second Claim for Relief, Bioceutica is liable to Plaintiff and Class B for over $50,000 in statutory damages provided under GBL § 399-p(9), plus attorney's fees and costs of this action.

60.     Plaintiff and the Classes are entitled to an injunction against Bioceutica ordering Bioceutica  to cease its violations of the TCPA and GBL § 399-p(3)(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A.     An order certifying the Classes and appointing Plaintiff as the representative of the Classes and appointing the law firms representing Plaintiff as counsel for the Classes;

B.     An award to Plaintiff and the members of Class A of statutory damages of more than $1,500,000 pursuant to 47 U.S.C. § 227(b)(3);

C.     If the Court finds that the Defendants' above-described conduct was willful and/or knowing, an award to Plaintiff and the members of Class A of more than $4,500,000;

D.     An injunction against Defendants, on behalf of Plaintiff and the members of Class A, prohibiting Defendants from violating 47 U.S.C. § 227;

E.     An award to Plaintiff and the members of Class B of statutory damages in excess of $50,0000 pursuant to GBL § 399-p(9);

F.     An injunction against Defendants, on behalf of Plaintiff and the members of Class B, prohibiting Defendants from violating GBL § 399-p;

G.      An award of attorneys' fees and costs incurred to Plaintiff and Class B in bringing the portion of this action concerning Defendants' GBL 399-p violations against Plaintiff and Class B; and

H.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: White Plains, New York
           March 13, 2014

Respectfully submitted,

**BELLIN & ASSOCIATES LLC**

_____

By: Aytan Y. Bellin, Esq.
85 Miles Avenue
White Plains, New York 10606
Tel:  (914) 358-5345
Fax: (212) 571-0284
E-mail: aytan.bellin@bellinlaw.com

--And--

**SCHLAM STONE & DOLAN LLP**

By: Robert L, Begleiter, Esq
 Jeffrey M. Eilender, Esq.
 Andrew S. Harris, Esq.
 26 Broadway
 New York, New York 10004
 Tel: (212) 344-5400
 Fax: (212) 344-7677
 E-mail: RBegliter@schlamstone.com
 E-mail: jme@schlamstone.com

*Attorneys for Plaintiff and the Classes*